## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL TERRELL VARGAS, JR., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-0765 |
| | : | |
| JOSEPH J. MCCAULEY, *et al*., | : | |
|     Defendants. | : | |

### <u>MEMORANDUM</u>

KENNEY, J.                                                                                          JUNE 10, 2024

  Plaintiff Angel Terrell Vargas, Jr. initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Vargas asserts claims in connection with his arrest and prosecution for drug and conspiracy crimes. Vargas's initial Complaint, which named Philadelphia Police Officer Joseph J. McCauley only, was dismissed without prejudice. *See Vargas v. McCauley*, No. 24-0765, 2024 WL 896746, at *1 (E.D. Pa. Mar. 1, 2024). Vargas returned with this Amended Complaint, in which he names three additional Defendants. For the following reasons, the Court will dismiss the Amended Complaint in part. Vargas will be given an opportunity to file a second amended complaint or proceed on his claim against Officer McCauley that passes statutory screening.

### I.  FACTUAL ALLEGATIONS

  In addition to McCauley, Vargas names the following three other Defendants in his Amended Complaint: (1) the City of Philadelphia; (2) "Mayor Jim Kennedy;"[1] and (3) "Danielle Outlaw, Chief of Police." (Am. Compl. at 4.)[2] In his initial Complaint, Vargas alleged that

---

[1] The Court understands Vargas to be referring to the former Mayor of Philadelphia, Jim Kenney.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

McCauley "arrested [him] a few times on the same charge in the City of Philadelphia."  (ECF 2 at 4.)   Based on these allegations, Vargas asserted Fourth Amendment false arrest and false imprisonment claims against McCauley.  (*Id*.)  In the March 1st Memorandum, the Court granted Vargas leave to proceed *in forma pauperis* and dismissed his Complaint upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  *See Vargas*, 2024 WL 896746, at *2-*3.  The Court concluded that Vargas failed to provide sufficient factual allegations in support of his claims, including details about why he was arrested or detained and why those arrests and detentions lacked probable cause.  *Id*. at *2.  The Court dismissed Vargas's claims without prejudice and permitted him the opportunity to file an amended complaint.  Vargas returned with this Amended Complaint.[3]

In his Amended Complaint, Vargas alleges that on January 3, 2020, he was arrested and charged with:  (1) "manufacture, delivery, or possession with intent to manufacture or deliver"; (2) conspiracy; and (3) possession of a controlled substance by a person not registered.  (Am. Compl. at 6.)  Vargas states that he was held in county jail for eight months until the charges were ultimately dropped "because the Commonwealth had no 'evidence' to move forward."  (*Id*. at 6-7.)  Vargas states that he was later rearrested and charged with the same three crimes.  (*Id*. at 7.)  The preliminary hearing on the second arrest was held on August 2, 2021.  (*Id*.)  Vargas alleges that these charges were "held over to court" but ultimately dismissed when Vargas's motion for writ of habeas corpus was granted.  (*Id*.)  Vargas states that he was then rearrested and charged again with the same crimes on August 24, 2022.  (*Id*.)  According to Vargas, the charges were

---

[3] Vargas attached the Amended Complaint as an exhibit to a "Motion for Leave to Amend Complaint Pursuant to F.R.C.P. 15(a)(2)."  (*See* ECF No. 8 at 1-4.)  Because the Court had previously granted Vargas permission to file an amended complaint, Vargas's Motion will be denied as unnecessary.

ultimately *nolle prossed* because "no evidence exists to corroborate or substantiate the account alleged." (*Id*.)  Vargas attaches to his Amended Complaint a criminal docket sheet showing that the three charges were *nolle prossed* on December 11, 2023. (*See* Am. Compl. at 14.)[4]

Vargas states that he was subjected to a "fraudulent case," which caused his "liberty [to be] taken more than once." (*Id*. at 7.)  He alleges that McCauley initiated criminal charges against him without probable cause. (*Id*. at 8-9.)  He further alleges that Kenney and Outlaw "displayed deliberate indifference" to "their subordinate officers['] entrenched misbehaviors and conduct," which amounted to an "informal and unofficially adopted "custom." (*Id*. at 7.)  Based on these allegations, it appears that Vargas asserts Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims against Defendants.  He also asserts a *Monell* claim against the City of Philadelphia.  For relief, Vargas seeks money damages, a declaration that Defendants "violated [his] rights under the Constitution," and an injunction that orders McCauley to be removed from his job and investigated. (*Id*. at 10.)[5]

---

[4] Despite these charges being dismissed, Vargas appears to be detained on other charges and is currently confined at SCI Pine Grove.

[5] Vargas's request for a declaration will be dismissed because declarations are "inappropriate solely to adjudicate past conduct," and are not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

Vargas's request for injunctive relief will also be dismissed.  The Court has no authority to order that McCauley be terminated from his position. *See Hall v. Carny*, No. 22-4094, 2023 WL 187569, at *1 (E.D. Pa. Jan. 13, 2023) (dismissing with prejudice the request that defendant be terminated from his employment); *Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *1-2 n.4 (E.D. Pa. Sept. 28, 2022) (construing plaintiff's request for the court to terminate the defendants' employment as seeking injunctive relief and holding that the court has no authority to terminate the employment of a state employee).  In addition, to the extent Vargas's request that the Court order an "investigation" of McCauley can be construed as an attempt to lodge criminal charges against the officer, the request will also be dismissed because the Court lacks the authority to order such relief. *See Kent v. Ed Carber Inc.*, 467 F.

## II.      STANDARD OF REVIEW

As Vargas is proceeding *pro se*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Vargas is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.      DISCUSSION

---

App'x 112, 113 (3d Cir. 2012) (*per curiam*) (affirming dismissal of claims seeking initiation of criminal charges because "a private person does not have a 'judicially cognizable interest in the prosecution . . . of another'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

Vargas again asserts Fourth Amendment claims against Defendants. As the Court noted in the March 1 Memorandum, the vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.   Claims against McCauley

The Court understands Vargas to assert Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution against McCauley. The false arrest and false imprisonment claims asserted in Vargas's initial Complaint were dismissed as undeveloped because Vargas failed to allege sufficient facts about the arrests and detainments, including "details about the circumstances surrounding those arrests and detainments" and why McCauley lacked probable cause. *See Vargas*, 2024 WL 896746, at *2 ("Without additional details about the arrests, detainments, and McCauley's alleged lack of probable cause, Vargas's Fourth Amendment claims for false arrest and false imprisonment are undeveloped and will be dismissed."). To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).[6] "[P]robable cause to arrest exists when the facts and circumstances

---

[6] "False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'" *Karkut v. Target Corp.,* 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting *Brockington v. Phila.,* 354 F. Supp. 2d 563, 570 n. 8 (E.D. Pa. 2005) (citation omitted)).

within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person

to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483.

"False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any

one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir.

2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)).

     The false arrest and false imprisonment claims asserted in Vargas's Amended Complaint

fail for the same reason they did in his Complaint.  Vargas merely alleges that he was arrested on

drug and conspiracy charges on January 3, 2020, and twice rearrested on those charges around

August 2021 and August 2022.  He provides no details about the circumstances surrounding the

arrests, including facts that could support an inference that McCauley lacked probable cause to

arrest and detain him.  Although Vargas does allege that McCauley lacked probable cause to

initiate criminal charges against him, this allegation goes to the malicious prosecution claim and

not to any claims related to the initial arrests and detentions.  Accordingly, Vargas's false arrest

and false imprisonment claims will be dismissed.

     To state a constitutional malicious prosecution claim, a plaintiff must allege facts

establishing that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding

ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the

defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the

plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of

a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

"Probable cause exists if there is a fair probability that the person committed the crime at issue."

*Harvard*, 973 F.3d at 199 (internal quotations omitted).  "To demonstrate a favorable termination

of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious

prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). Vargas alleges that McCauley initiated drug and conspiracy crimes against him without any evidence and that the charges were ultimately dismissed on more than one occasion. At this stage of the case, Vargas has alleged sufficient facts to state a plausible malicious prosecution claim against McCauley. This claim may proceed to service.

**B.      Claims against City of Philadelphia and Official Capacity Claims**

Vargas asserts claims against the City of Philadelphia as well as official capacity claims against all Defendants. Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (*quoting Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978))). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Since Vargas's official capacity claims are essentially the same as his claims against the City of Philadelphia, the Court will analyze these claims together according to the standards for pleading a municipal liability claim.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d

1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  It is not enough, however, to allege the existence of a policy or a custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id*. (*citing Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id*. (quoting *Bielevicz*, 915 F.2d at 850).

In addition, a *Monell* claim may not be based on allegations that simply paraphrase the standard for municipal liability.  Such allegations are too vague and generalized to support a plausible *Monell* claim.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under Monell"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018).  Vargas's *Monell* claim, as pled, is based on allegations that are vague, generalized, and conclusory.  He alleges that the City of Philadelphia, through Kenney and Outlaw, have "informally and unofficially adopted and maintain[ed] a custom" with respect to their police officers "in the areas of investigating, arresting, and [] the 'issuance of process,'" which violates the rights of individuals who come into contact with the police officers.  (Am. Compl. at 7. 9.)  Aside from alleging McCauley's initiation of charges against him, Vargas includes no other facts about how the City was deficient in the areas of investigation, arrest, and issuance of process.  Vargas's conclusory allegations are not sufficient to state a plausible *Monell* claim.  *See Phillips v. Northampton Co.,*

*P.A.*, 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (affirming dismissal of *Monell* claim and concluding that "[o]ther than some wholly conclusory and highly generalized assertions about unspecified patterns of misconduct, Phillips pleaded no facts to support the existence of any policy, custom, or practice beyond those involving his own arrests, convictions, and confinement"). Accordingly, Vargas's § 1983 claims against the City of Philadelphia and the official capacity claims will be dismissed.

### C.    Claims against Kenney and Outlaw

Vargas also asserts Fourth Amendment claims against Kenney and Outlaw.  However, Vargas alleges no facts about Kenney and Outlaw's involvement in the events giving rise to his constitutional claims.  As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020).

Nor has Vargas alleged a basis for supervisory liability against Kenney and Outlaw.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be

liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Vargas alleges that Kenney, as the Mayor of Philadelphia, was the "chief executive . . [of] the law enforcement operations" of the City, and that Outlaw, as Chief of Police of the City of Philadelphia, was "legally responsible for overseeing . . . [the] operations" of the Philadelphia Police Department and is the supervisor to the police officers. (Am. Compl. at 6.) Vargas further alleges that Kenney and Outlaw "displayed deliberate indifference towards their subordinate officers entrenched behaviors and conduct." (*Id*. at 7.) These allegations do not support a plausible supervisory claim against either Kenney or Outlaw. First, Vargas has not plausibly alleged that Kenney or Outlaw established or maintained a policy or custom with deliberate indifference to its consequences. As noted above, allegations that Kenney and Outlaw "informally and unofficially adopted and maintain[ed] a custom" with respect to their police officers' actions in investigations, arrests, and issuance of process (*see* Am. Compl. at 7, 9) are far too conclusory to support a plausible claim. *See supra* at § III.B; *see also Aruanno v. Corzine*, 687 F. App'x 226, 229 (3d Cir. 2017) (*per curiam*) (claims that supervisors failed to train, supervise, or discipline subordinates failed when plaintiff "did not show that the Defendants were aware of the violations alleged in his

complaint, either before or after they occurred"). Second, Vargas has not alleged any facts to support a plausible inference that Kenney or Outlaw participated in or directed McCauley or others to arrest Vargas and charge him with drug and conspiracy crimes. Accordingly, all claims asserted against Kenney and Outlaw will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Vargas's Amended Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. His malicious prosecution claim against McCauley passes statutory screening and may proceed to service. The balance of the Amended Complaint will be dismissed without prejudice. Vargas may file a second amended complaint in the event he believes he can address the defects the Court has noted as to his Fourth Amendment claims. In the alternative, Vargas may elect to proceed on his malicious prosecution claim against Officer McCauley.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**